UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY FLOREK and
MEGAN FLOREK,

        Plaintiffs,

    v.                                                  Case No. 23-C-122

MICHAELA BEDORA and
CITY OF NEENAH,

        Defendants.

## DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

        In January 2023, a code enforcement officer for the City of Neenah sent Plaintiffs Timothy and Megan Florek a notice of violation of a City sign ordinance, ordering Plaintiffs to remove from their front yard a sign that reads "Don't Rezone Shattuck Middle School Leave R1 Alone." On January 30, 2023, Plaintiffs filed this action against Defendants City of Neenah and Michaela Bedora, a code enforcement officer with the City's police department, challenging the constitutionality of the City's sign ordinance. Along with their complaint, Plaintiffs filed a motion for temporary restraining order and preliminary injunction that prohibits Defendants from taking further action on their Notice of Violation or enforcing the sign ordinance. The court has jurisdiction over this matter under 28 U.S.C. § 1331.

        At a February 2, 2023 hearing on Plaintiffs' motion, Defendants advised that the City agreed to suspend the enforcement of the sign ordinance pending resolution of Plaintiffs' motion for preliminary injunction. The court set a briefing schedule on Plaintiffs' motion for preliminary injunction. That motion is now fully briefed and ready for resolution. For the following reasons, Plaintiffs' motion for a preliminary injunction will be granted.

## BACKGROUND

The City, like many municipalities, has ordinances regulating signs. *See generally* City of Neenah Municipal Code Ch. 24, Dkt. No. 4-1. The City's sign ordinance generally prohibits signs from being displayed without a permit. *See id.* § 24-27. But the City recognizes certain categories of signs that do not require a permit. *See id.* § 24-131. The sign ordinance creates two categories of signs that do not require a permit: signs requiring a time limit and signs not requiring a time limit. *See id.* §§ 24-132 & 24-133. Section 24-132 lists nine types of signs not requiring a permit that are subject to a time limitation for display: construction signs; political campaign signs; real estate signs; pennants, searchlights, or balloons; yard sale signs; subdivision signs; banners; portable signs for residential properties; and athletic field signs. Section 24-133 governs 14 other classifications for signs not requiring a permit, all of which are not subject to a time limit restriction to their display: directional and instructional signs; nonilluminated emblems or insignia; government signs; home occupation signs; house numbers and name plates; interior signs; memorial signs and plaques; no trespassing or no dumping signs; public notices; public signs; temporary window signs; on-premises symbols or insignia; neighborhood identification signs; and portable signs for commercial and industrial properties. Both sections create various time limitations and size restrictions for each sign classification.

The enforcement section of the City Code provides that a person's first violation of the ordinance carries with it a forfeiture of "not less $10.00 nor more than $500.00, plus costs of prosecution." City of Neenah Municipal Code § 1-20(c)(1). "For each subsequent violation of the same provision by the person," the person is punished by a forfeiture of "not less than $25.00, nor more than $1,000.00, plus costs of prosecution." *Id.* § 1-20(c)(2). Each day a sign is displayed in violation of the City's sign ordinance constitutes a separate offense. *See id.* § 1-20(d).

Plaintiffs live in the City of Neenah, Wisconsin. They assert that they are opposed to any past, current, or future efforts to rezone the property upon which Shattuck Middle School is located that would change the character of the neighborhood. To express their opposition to rezoning efforts, Plaintiffs have a small sign displayed on their front yard that reads, "Don't Rezone Shattuck Middle School Leave R1 Alone."



Decl. of Timothy Florek ¶ 5, Dkt. No. 5. On January 9, 2023, Bedora, in her role as a code enforcement officer, sent Plaintiffs a Notice of Violation on behalf of the City, informing Plaintiffs that the sign violated the City's sign ordinance and had to be removed by February 8, 2023. Dkt. No. 5-1. The notice indicated that the City received a complaint about temporary signs in Plaintiffs' neighborhood and that Plaintiffs' sign violated the temporary sign limitations of § 24-132(8). That section provides:

> Portable signs—Residential properties. One portable sign of six square feet or less may be displayed on a residential property for a period of 30 days within a 90-day period. These signs cannot display off-premises businesses.

City of Neenah Municipal Code § 24-132(8). The notice explained that, "[b]ecause there is nothing pending with city council regarding re-zoning Shattuck Middle School, the signs are considered a 'temporary sign'" and noted that, "[i]f there is a re-zoning request filed again with the City, the sign would be considered a 'political sign' and be permitted to be displayed again as long as a vote is pending." Dkt. No. 5-1.

3

Plaintiffs responded to the Notice of Violation via a letter from counsel on January 19, 2023. Dkt. No. 5-2. Plaintiffs informed Defendants that the Ordinance, and Defendants' enforcement of it, violated their First Amendment rights. They requested that the City withdraw the January 9, 2023 Notice of Violation within five days. *Id.*

Rather than withdraw the notice, however, Defendants mailed Plaintiffs an amended Notice of Violation on January 24, 2023. Dkt. No. 5-3. The amended notice again advised that the City had received complaints regarding portable signs in Plaintiffs' neighborhood, that Plaintiffs violated § 24-132(8), and that Plaintiffs' sign must be removed by February 8, 2023. The amended notice no longer contained the statement that Plaintiffs' sign could be displayed as a political sign if a re-zoning request is pending before the City. Defendants did not otherwise respond to Plaintiffs' letter. Plaintiffs then initiated this action.

**ANALYSIS**

"A preliminary injunction is an exercise of very far-reaching power, never to be indulged . . . except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotation marks and citations omitted). A plaintiff seeking a preliminary injunction must show "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Id.* at 544–45 (citation omitted). If a plaintiff makes such a showing, the court proceeds to "a balancing phase, where it must then consider: (3) the irreparable harm the nonmoving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* at 545 (citations and quotation marks omitted). "The party seeking a preliminary injunction bears the burden of showing that it is warranted." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (citation omitted). In First Amendment cases, such as

4

this one, "the likelihood of success on the merits will often be the determinative factor." *Higher Soc'y of Ind. v. Tippecanoe Cty., Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017) (internal quotation marks and citation omitted).

Plaintiffs assert that they have a likelihood of success on the merits for three independent claims: (1) the City's sign ordinance is unconstitutional because it is content-based regulation of speech that is not narrowly tailored to serve compelling government interests; (2) the sign ordinance is an arbitrary and unreasonable restriction on protected speech; and (3) Defendants cannot punish Plaintiffs for engaging in protected expression. The court begins with Plaintiffs' argument that the City's sign ordinance is content-based.

The First Amendment, as applied to states and local governments through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. Signs "are a form of expression protected by the Free Speech Clause." *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). Though municipalities can enforce regulations that "do not single out any topic or subject matter for deferential treatment," *see City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464, 1472 (2022), "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). "Content-based laws," or those laws that "target speech based on its communicative content," are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (citations omitted). A law is "content-based" if the "regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (citation omitted). Facially content-neutral laws will also be considered "content-based" if they "cannot be 'justified without reference to the content of the regulated speech'" or

are "adopted by the government 'because of disagreement with the message the speech conveys.'" *Id.* at 194 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (alterations omitted).

Citing *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015), Plaintiffs assert that the City's sign ordinance is unconstitutional because it is content-based regulation of speech that is not narrowly tailored to serve compelling government interests. In *Reed*, the Town of Gilbert adopted a sign code that identified various categories of signs based on the type of information they convey and subjected each category to different restrictions. *Id.* at 159. The sign code listed three categories of signs: "ideological signs," defined as signs communicating a message for noncommercial purposes; "political signs," defined as temporary signs designed to influence the outcome of an election; and "temporary directional signs," or signs that directed the public to the meetings of nonprofit groups. *Id.* at 159–60. The sign code placed the most stringent requirements on temporary directional signs. When a local church, led by its pastor Clyde Reed, posted signs for its Sunday services beyond the time allowed for "temporary directional signs," town officials cited the church for violating the sign code, and the church filed suit. *Id.* at 161–62.

The Supreme Court held that the town's sign code was facially content-based because the restrictions in the sign code "depended entirely on the communicative content of the sign." *Id.* at 164. The Court reasoned that the communicative content of the signs had to be read and interpreted to determine whether the sign was directional, political, or ideological and what restrictions applied. *Id.* Rejecting arguments that the sign code was content neutral because the town did not regulate based on a disagreement with the message conveyed, the Court explained that a "law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 165 (internal quotation marks and citation omitted). Ultimately, because the town could not show that its content-based restrictions were narrowly tailored to further a compelling

6

governmental interest, the Supreme Court found the sign code could not withstand strict scrutiny. *Id.* at 174.

Plaintiffs assert that, like the Town of Gilbert, the City of Neenah subjects signs to different restrictions based on their content. Defendants maintain that the ordinance is content neutral because the section governing portable signs for residential properties, § 24-132(8), does not target any particular content and there is no evidence that the City disagreed with the content of Plaintiffs' sign. But, as noted above, *Reed* rejected the argument that the non-discriminatory or benign motive of the city that enacts it can save a content-based ordinance. And the City's ordinance is every bit as content-based as the Town of Gilbert's. When read as a whole, the City sign ordinance's "regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011)).

Depending on the sign's content, under the sign ordinance, some signs require permits while others do not. *See* City of Neenah Municipal Code § 24-131. Sections 24-132 and 24-133 regulate the 23 categories of signs that do not require permits. Section 24-132 lists nine different content-based sign classifications and imposes different regulations as to the size and time of display. While signs falling within the 14 categories listed in § 24-133 have various size restrictions depending on the sign's content, they are not subject to any time limitations for display. In addition, § 24-132(8) imposes more stringent restrictions on portable signs for residential properties than signs conveying other messages. For instance, an individual can only display a portable sign of six square feet or less for a period of 30 days within a 90-day period. *See id.* § 24-132(8). But the same individual can display a "no trespassing" or "no dumping" sign not to exceed one and one-half square feet in their front yard indefinitely, *see id.* § 24-133(8), or display one real estate sales sign not to exceed 32 square feet for up to 30 days after the sale of the property, *see id.* § 24-132(3).

7

Defendants cite *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022), in support of their argument that not all content-based sign ordinances are subject to strict scrutiny. In *City of Austin*, the Court upheld an ordinance that imposed greater restrictions on signs that advertised products or services that were not located on the same premises as the sign (off-premises signs) than those that advertised products or services available at the same location as the sign (on-premises signs). In upholding the City of Austin ordinance, the Court distinguished *Reed*, noting that, unlike the Town of Gilbert's ordinance at issue in that case, Austin's "off-premises distinction requires an examination of speech only in service of drawing neutral, location-based lines." *Id.* at 1471. Because the ordinance was "agnostic as to content," the Court concluded that "absent a content-based purpose or justification, the City's distinction is content neutral and does not warrant the application of strict scrutiny." *Id.* Because the ordinance at issue does not involve a simple "on-premises/off-premises distinction, *City of Austin* is inapposite.

In short, this case is controlled by *Reed*. Whether the restrictions in the City's sign ordinance "apply to any given sign . . . depend[s] entirely on the communicative content of the sign." *Reed*, 576 U.S. at 164. That is, the regulation "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. It is immaterial that Defendants may not have disagreed with the content of Plaintiffs' sign. *See id.* at 165 (noting that a "law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." (internal quotation marks and citation omitted)). The City's sign ordinance is a content-based restriction on speech and is therefore "subject to strict scrutiny." *Id.* at 164.

Strict scrutiny requires that the government prove that a content-based restriction on speech furthers "'a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* at 171

8

(quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Accordingly, the City has the burden to show that the sign ordinance's content-based regulations are narrowly tailored to serve compelling governmental interests. At this stage in the litigation, Defendants fail to make this showing.

Defendants cite § 24-1 of the City of Neenah Municipal Code, which states that the purpose of the City's sign ordinance is to (1) regulate, administer, and enforce outdoor sign advertising and display within the City; (2) protect the safety and welfare of the public; (3) promote well maintained and attractive sign displays within the community; and (4) provide for adequate business identification, advertising, and communication. They assert that allowing City "residents to leave random signs up indefinitely would frustrate the City's goals." Defs.' Br. at 6, Dkt. No. 15. Defendants contend that "prolific and permanent resident signs may obstruct sight lines and confuse the ability to identify signs being utilized for safety and business purposes." *Id.* They maintain that the sign ordinance is narrowly tailored to achieve the City's goals of promoting aesthetics, safety, and commerce.

Without determining whether the City's stated interests are compelling interests, the sign ordinance provisions are not narrowly tailored to serve those interests. "'A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least restrictive alternative).'" *Bauer v. Shepard*, 634 F. Supp. 2d 912, 940–41 (N.D. Ind. 2009) (quoting *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc) (citing cases)). In this case, the City's sign ordinance provisions are underinclusive.

In considering Defendants' interest in aesthetics, the City cannot claim that placing strict size and time limits on certain signs is "necessary to beautify" or declutter the City while at the same time allowing other signs "that create the same problem" to be larger or displayed indefinitely. *See Reed*, 576 U.S. at 172. Similarly, as to the protection of the public's safety and welfare, Defendants have not established that certain "signs pose a greater threat to safety than" any other types of signs or that limiting certain signs will assist individuals in identifying signs being utilized for business purposes. *Id.* Like the code provisions in *Reed*, the City's ordinance provisions are "hopelessly underinclusive." *Id.* at 171. The City also has "ample content-neutral options available to resolve problems with safety and aesthetics." *Id.* at 173. As the *Reed* Court recognized, the City "may go a long way toward entirely forbidding the posting of signs, so long as it does so in an evenhanded, content-neutral manner." *Id.* (citing *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 817 (1984)). For these reasons, Defendants appear unlikely to overcome the strict scrutiny standard, and Plaintiffs are thus likely to succeed on the merits of their claim that the sign ordinance is an unconstitutional content-based regulation of speech. Because the court concludes that Plaintiffs have a substantial likelihood of success on this claim, it need not consider Plaintiffs' likelihood of success on their other claims.

In First Amendment free speech cases such as this one, a plaintiff who is likely to succeed on the merits of his claim will normally be entitled to a preliminary injunction. *Higher Soc'y*, 858 F.3d at 1116. "That is because even short deprivations of First Amendment rights constitute irreparable harm, and the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Id.* (internal quotation marks and citation omitted). Indeed, Defendants have not challenged Plaintiffs' assertion that they have no adequate remedy at law,

they will suffer irreparable harm if preliminary relief is denied, and the balance of harms weighs in favor of granting the preliminary injunction here. The court finds that Plaintiffs have carried their burden to obtain a preliminary injunction.

Rule 65(c) states that the court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Neither party has advised the court that any damages are likely to result from the court granting the plaintiff's motion. The court therefore concludes that no bond is necessary.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction (Dkt. No. 3) is **GRANTED**. Defendants are immediately enjoined from enforcing the sign ordinance against Plaintiffs as to their "Don't Rezone Shattuck Middle School Leave R1 Alone" yard sign. The Clerk is directed to set the matter on the court's calendar for a Rule 16 telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 6th day of April, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge